Mr. Goldberg. Good morning. May it please the court. I'm Daryl Goldberg. I'm here on behalf of the appellate Benjamin Barry Kramer. This appeal, your honors, raises three issues that revolve primarily around Mr. Kramer's motion for an accounting. The court was correct in one respect, that Mr. Kramer has additional interests that have in the government's possession that have not been accounting for, but the district court erred when they concluded that the government forfeited approximately 1.9 million dollars his interest through a Gilbert family settlement as a substitute asset. When that was already in possession of the government, and a careful look at that order, it for forfeits nothing as to Mr. Kramer. But even if the court were to believe that was appropriate, the government never forfeited Kramer's entire interest in LCP or his other assets that remain in the possession of the government. The 1.9 million dollar reference in the district court's order is only a small portion of the vast amount of Kramer's interest in the government possession. But even if they, even if the court were to find that they could forfeit all of this, or it is somehow no longer ripe for challenge, the district court also erred by refusing to conduct a complete accounting of Kramer's full interest in LCP and his because the court deemed it difficult or that it was unsuccessfully litigated in a different district court. So I would like you to pause on that for a moment because this matter, I'm not sure what to call it, this thing, has been under litigation for decades in courts across the country. Certainly the 11th Circuit would probably run in horror if you come and file another lawsuit there. They have visited and visited this and so one of the questions, one of the many questions that bothered the district court judge here was to what extent either should he, assuming he had the power to do it, or could he revisit deals that had settled other aspects of the interests in these properties or in their income or, you know, broadly speaking their interests, how much does this accounting reopen? Does this district judge now become, in a sense, the MDL judge for the Kramer matter? This is a, that would be a very ambitious statement especially for something that never went through an MDL sort of process. Well, Your Honor, to answer your question, the 11th Circuit made clear that nothing was forfeited as to Mr. Kramer in that court. Only as to the Gilbert interest, though. I mean, it was, it resolved lots of other interests. There was only so much left over, I think. There was nothing resolved as to Mr. Kramer. They said that the, that it's void in the context of Mr. Gilbert's case, but they said there was never a forfeiture order, not even a single order entered upon conviction in Mr. Kramer's case, that the, the court essentially retroactively tried to fix the mistake that was made when there was no forfeiture judgment entered, nothing was presented before a jury. The words of the 11th Circuit suggests that they held nothing as to Mr. Kramer, and so there's nothing for him to complain about over there, and the government's suggestion that we ought to be litigating in the Southern District of Florida doesn't make much sense because the government, well, one, they didn't challenge jurisdiction in the district court, but two, they also availed of the jurisdiction. They, they are suggesting that they settled in an ancillary proceeding with the Gilbert Family Trust in the Southern District of Illinois. They chose to address these issues here because perhaps they thought, or it's actually not even to speculate whether they thought they had a valid order based out of the 11th Circuit or not, or in the Southern District of Florida, but the other, the other thing is that 21 USC 853 L gives courts authority in any jurisdiction to address these forfeiture matters of property, whether the property is located in California or whether there has been some sort of litigation in the state of Florida, but it, the, the point is, is that nothing has ever been forfeited. The only valid order of forfeiture to Mr. Kramer is the $60 million in personam judgment, and, um, we don't contest that here. There's a pending motion in the district court about the collectability on the judgment at this point, but none of his interests in LCP have ever been forfeited. And even if this court were to believe that this 2003 order, um, through the Gilbert Family Trust, um, even though if you follow the logic of the 11th Circuit, he was a nominee, had no ownership interest. Um, but even if somehow that should have been forfeitable to Mr Kramer, the problem is, is that he had no standing to appeal something that was entered in an ancillary proceeding. He had no standing to participate. He did not participate because he did not have notice of it. It was simply just a settlement agreement that was executed by the judge in that case. But, you know, Mr, Mr Goldberg, one of the problems, one of the many problems with this case is that it's, it's practically a history lesson. I mean, most of these things happened so long ago. Um, and various pieces of the various assets, interests of various parties have been adjudicated over the year. And maybe one thing it would help me, at least if you focused on, since the government relies on this a lot, is this September 2003 settlement agreement in the Southern District of Illinois, which seems to be about the Gilbert Properties forfeits as the owners of this bicycle club. Um, and that takes us directly to Kramer because Kramer has retained interest in LCP. But why doesn't that just retire this? And why is the government not right that you're really trying to reopen things that have long since been settled? The first time Mr Kramer ever heard that $1.9 million was forfeited as a substitute asset evaluation was in this motion for an accounting. He didn't participate because he couldn't participate. He was in prison, but and he was unrepresented. But that's besides the point for just a moment. Well, he's serving a life sentence, as I recall. I assume he's still in prison, right? Correct. But so he it's an ancillary proceeding. It's the execution of a settlement agreement, and he can't participate by definition. But also, um, if a careful look at it, only appears to call its substitute property, something that is the ownership interest of Michael Gilbert. Michael Gilbert is a nominee. He doesn't have an ownership interest, and, um, that's that's the point. There's nothing to complain about in 2000 and three, even if he would have known about it. And so the government suggestion that he should have complained about it then and that we're challenging that particular order is not true. There is nothing to Then there's nothing to complain about up and until this very point when the first time 1.9 million surfaces is in 2019 or 2020. So, um, so how is it possible, though? I mean, these are these convictions for different crimes. Okay, 1988 in Southern District of Illinois, 1990 in the Southern District of Florida. And here we are in 2021 pushing 2022, um, trying to figure out what he might be entitled to either is terms of return of assets from I gather what you're really after is is the profits that the Bicycle Club generated over the years or, you know, those kinds of sources of value, not these smaller things. But it all seems too late. Well, but it can't be too late because there's never an order that ever divested him of anything. What should have happened? What could have happened is that they should have taken this to a jury and have a jury make a determination on a particularized asset instead of seeking an in persona money judgment, which is what they did. And they didn't do that. He would have had a right to a jury trial. He not would have. He does have a right to a jury trial before the conclusion of the criminal case, and they can't now later forfeited as a substitute asset because it is not a substitute asset by definition. So it's your position, then, that there's just no time limit whatsoever for people to these cases. In this particular case, there is not a time limit, particularly because he's never been put on notice. He never learned of anything like this $1.9 million figure into a later notice. Did he not receive? He knows about the Bicycle Club. He knows about the corporations, but he knows his assets, but nothing that was ever entered in this case purported to strip him of anything. So according to him, he thought that this whole entire time, if the government's in possession of these assets, that it ought to be a money judgment. And he learned from a news article in a magazine in 2015, hence the pro se filing of his lawsuit that, Whoa, Eugene Fisher, his co defendant, who, by the way, was the only one who was given notice, direct notice of this 2003 order, um, started civil litigation that ultimately led to his release from prison. And then it led to his co defendant, Mr Lanier, in the same instance. And so that was the very first time it reared its head. And and then, um, he filed a lawsuit. We amended that lawsuit. We ended up with a motion for an accounting in front of Judge Gilbert, and that's why we're here. I know. I know. He puts it over in the criminal docket. Correct. So, Your Honor, just to talk about this, the honey cut the United States Supreme Court makes clear that an asset that could be directly forfeitable by definition cannot be a substitute asset. You can't forfeit something that was already in the government's possession that was also been tainted. And, um, the definition of a substitute asset is that it's something that is untainted, innocent and clean, and it, um, it must meet the strict criteria of 8 53 P. Also, 32.2 to be forfeited. A later time, the government talks about relation back. There is no relation back to anything because there is no valid order of forfeiture to a particular asset. The tainted asset. You can't relate back to a substitute asset. Um, it's that retroactive vesting only relation back argument goes all the way back to the fact that it was his drug money that was used to get the club launched. And that's a that's a determination for the jury to find that nexus prior to conviction. And that's not what happened in this case. And that's the point. They should have done that. It could have done that, but they didn't do it. They hold nothing. The case in Florida talks about the bike club and not L. C. P. So the 11th Circuit makes very clear they hold nothing as to Kramer. They're sitting on millions and millions and millions and millions of dollars, and accounting is appropriate. And I'll just say that, um, I want to reserve some time for rebuttal. But the we believe that the standard of review here is the Novo. It's not even if this accounting is an equitable remedy. It's also balanced in law. The illegal remedy. The entire point of the accounting was to determine what is not known how much of his interests have been collected and should be applied to his forfeiture to the extent they can. And that's also a matter of law. And all of these conclusions that Judge Gilbert made, um, underlying his decision is to allow this accounting is that, um, should be reviewed to Novo statutory interpretations, the settlement agreements, orders, um, I'd like to reserve. If there's no questions, I'd like to reserve some time for rebuttal remaining time. Certainly, Council is to read. Good morning, judges and may it please the court. Peter Reed for the United States. Because the district court accurately accounted for the forfeitures and Kramer's criminal case below, the court should affirm that should reject pellets invitation to relitigate matters that were settled long ago. I think there are four sets of problems with those arguments. First problem is issue of waiver and forfeiture. This court's cases make it very clear when a case or when a criminal defendant is a challenge of forfeiture. The right place to do that is on direct appeal. There was no direct appeal either back in the nineties. I miss the criminal, um, judgment or in 1996 2003. But you know, Mr Reed, that's not quite what I understand Mr Kramer to be arguing right now. He certainly could have challenged the whole part of the $60 million forfeiture had he chosen to on his direct appeal. But what I take from this sort of stepping back from these many legal proceedings is that there was this organization in which he had some interest, the Bicycle Club that was generating millions of dollars over the years. And he's saying, you know, I'd like to see where that went to the government. Just throw it into the Treasury. You know what? Why? Why doesn't that count for my $60 million, um, forfeiture judgment? And maybe there's even more money than that around. So some of it might come to me. So what's wrong with that argument? Judge, you know, I think we're moving down to the to the merits and the remedy problems with well, I'm interested in that if you wouldn't mind. No, I absolutely judge. And I think there's a factual problem, legal problem here. The factual issue here is the question is whether the funds that were seized belong to the government under a relation back kind of doctrine or to the third party successors of interest. So your position would be if the funds, if it were, you know, if you just had found his stash of criminally acquired money, the government's position is he just doesn't have an interest in that. That can't be used against his forfeiture because it's tainted. It just the government takes it. It belongs to the government. Is that correct? I'm not sure I'm following your question, Judge. I guess what I would say is this. I thought what you were saying was because it was criminally derived. It's not money he can then use to satisfy a forfeiture. I mean, I could understand a fine, but why not have to turn it over to the government as illegally obtained money? So maybe it's easier to take it, to flip this around and look at it this way. The interest that Kramer ever had in LCP was due to a loan that was made in the early 80s. That loan was paid off to Kramer in the late 80s. At that point, he has no interest in LCP from 1986 through the present. The government has an interest in LCP through a relation back doctrine that dates to 1983 when that investment was first made. Kramer, as of 1986, has no interest in LCP. And this, I think, is the problem with the remedy problem with Kramer's arguments today. The assets that he's talking about that were forfeited in the Florida case belong either to the government through a relation back or to the third party successors of interest. There's no legal claim. There's no middle ground for it to belong to Kramer because that loan was paid off in 1986. At that point, he's got, he has no interest in LCP personally. And if he has no interest in LCP, also has no interest in the club because his only interest in the club was through LCP. That's right, Judge. So the remedy problem here is perhaps one of those third party successors of interest, like Mr. Gilbert, could have challenged that in the Southern District of Florida. And, in fact, he did. But Mr. Kramer really has no basis for doing that. And, in fact, he didn't. He disclaimed his interest back in the 80s in front of that Southern District of Florida court. When it comes to the proceedings in this court, that's a little different. That's the Gilbert entity remaining interest, that 9.1865. Now, the same if the government has an interest, it's because it relates back to that original loan. Kramer doesn't have an interest as of 1986, even in that 9.1675. So... Are you saying you should have taken a cross appeal? I need to find this thought. No, Judge. I think the point here is that whether it's the Florida case or the Illinois case, the arguments being made today by Mr. Kramer don't make any sense from a remedy perspective. He's arguing that the assets weren't his. If they weren't his, then they belonged to a third-party successor in interest or to the government. And, in essence, he's asking that less money be attributed to his forfeiture balance. What the court found below is that there was this 1.9 million that was part of that 2003 forfeiture that could be attributable to Kramer through the relation back to 1983. So, I started by saying that there are four sets of problems. I think that first one is a waiver or forfeiture problem, which is, if you're going to challenge a forfeiture under Young, it's got to be done on direct appeal. The second problem, and I think it's related, is there's no statutory mechanism, the kind of collateral review that Mr. Kramer is seeking. He hasn't identified one here, and I don't think a motion for accounting is the kind of vehicle that can allow for the type of substantive challenges that Mr. Kramer is arguing in his brief. So, do you think there's any role, though, for an accounting just to see what money did the government collect, who did it belong to, how was it credited against various obligations to the government, whether it's a forfeiture judgment or whether it's some other type of obligation? Doesn't it seem that that's an appropriate and useful thing to happen? Judge, I would say two things. One, I don't see a statutory or rule-based authorization for that kind of motion for accounting. All that I found is that the Second Circuit case in Tame, which suggested it may be an equitable remedy. When it comes to what the district court did below, I think that the accounting is 100% correct. If this is the balance of his forfeiture judgment in the Southern District of Illinois, it's certainly true that to the degree a motion for accounting is an accessible, equitable remedy, the district court correctly limited itself to accounting for those forfeitures, right? There's a difference between saying, here's what's been seized and saying, let's talk about whether those seizures were valid or not. Those are the arguments Mr. Kramer is making on appeal. So I'd like to finally move on to what I think is the merits problems with Mr. Kramer's arguments, and I'll make this brief. My understanding from opposing counsel today is that his argument is that the property that was seized in 2003 was in fact tainted property and therefore not substitute assets. It's the first time I've heard a defendant argue that the seized property was more tainted than the government was suggesting, but I think that that just confirms that the seizure was appropriate under either provision. As to the Florida Rico forfeiture, again, as you noted, Judge Wood, the 11th Circuit only had some parties before it. It was the Gilbert entities who were in front of the court, and so its holding applies to the question in front of it. That what was being litigated there was the interest of the Gilbert entities in this 9.1675 percent interest in LCP, and that's the extent of that holding. If the court has no further questions, I'll sit down and urge the court to affirm. Thank you, Mr. Reed. Anything further, Mr. Goldberg? Yes, please. Your Honor, no one is conceding that it's tainted. All I'm suggesting is that it's the government's position that these funds are tainted, so based on that, they cannot do anything with it as a substitute asset. That was my point, but Judge Gilbert gave us an equitable remedy. The tame case that counsel cites talks about if there's equitable remedies are available when there's no other adequate remedy at law and the equities favor the exercise of discretion. It's fundamentally unfair for the government to seize millions and millions and millions of dollars, and according to what we have before us, there's not a single valid order of forfeiture except for a in persona money judgment, which does nothing to affect Kramer's interest in LCP or other personal property that we don't know whether he had, it comported with due process and notice. We don't know anything that happened to it. We're asking the government to simply give us that accounting, help us help the court make a determination about whether this judgment is satisfied, whether it can be satisfied, whether there is any excess that belongs to Mr. Kramer, but the government acts as one. Again, I believe if I understand counsel, he's trying to suggest that some of this stuff was litigated or ought to go back to Florida, and that's not the case. And again, there is no relation back doctrine because there's nothing, there's no valid order to relate back to. The 11th circuit dealt with Kramer's purported interest in the bike club. Kramer had interest in LCP, not the bike club. It's void, it's void that the court makes clear that they obtained nothing as a result of the orders in that case, whether Kramer appealed it or not, it's without legal significance. It's void ab initio as if it never happened. In the eyes of the law, it's meaningless. And so it also dovetails to this 2003 order, that is premised on that order being valid, and it's not. The whole basis of that is the government took a position that to the extent it wasn't already forfeited in Florida, we ought to be able to do it in Illinois. But even if you look at that entry of this order, it does nothing to Mr. Kramer at all. It's only the ownership interest, which doesn't even exist of a nominee, in this case, Michael Gilbert or the Gilbert Family Trust. So what Mr. Kramer is asking, Your Honors, it's undisputed that the district court and the government agree that Kramer is the real owner, has a real interest in significant assets. We're simply asking for an appropriate accounting that either returns his interest to him, applies it to the forfeiture to an extent it's still collectible, and we ask you reverse and remand to do exactly that. Thank you very much.